1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7            CENTRAL DISTRICT OF CALIFORNIA

8                  WESTERN DIVISION

9

10   JORGE AVILES,                    )   No. EDCV 06-942 FFM
                                      )
11            Plaintiff,              )   MEMORANDUM DECISION AND
                                      )   ORDER
12        v.                          )
                                      )
13   MICHAEL J. ASTRUE,[1]            )
     Commissioner of Social Security, )
14                                    )
              Defendant.              )
15   _____ )

16        On September 1, 2006, plaintiff Jorge Aviles brought this action seeking to

17   overturn the decision of the Commissioner of the Social Security Administration[1]

18   denying his application for Disability Insurance benefits. The parties consented,

19   pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

20   Magistrate Judge. Pursuant to the case management order entered on September 6,

21   2006, on June 1, 2007, the parties filed a Joint Stipulation detailing each party's

22   arguments and authorities. The Court has reviewed the administrative record ("AR"),

23

24

25

26   _____

27        [1]    Michael J. Astrue became Commissioner of the Social Security
     Administration on February 12, 2007 and is hereby substituted as defendant pursuant to
28   Federal Rule of Civil Procedure 25(d).

1 filed by defendant on March 7, 2007, and the Joint Stipulation.  For the reasons stated

2 below, the decision of the Commissioner is reversed and remanded for further

3 proceedings.

4

5 **PROCEDURAL HISTORY**

6 On October 3, 2003, Jorge Aviles filed an application for Disability Insurance

7 benefits.  Plaintiff alleged a disability onset of May 15, 2003.  The application was

8 denied initially and upon reconsideration.  Plaintiff filed a timely request for a hearing

9 before an administrative law judge ("ALJ").  ALJ Peter J. Valentino held a hearing on

10 February 15, 2006.  Plaintiff appeared with counsel and testified at the hearing.  On

11 April 22, 2006, the ALJ issued a decision denying benefits.  Plaintiff sought review of

12 this decision before the Appeals Council, which denied the request for review on July

13 18, 2006.

14 Plaintiff commenced the instant action on September 1, 2006.

15

16 **CONTENTIONS**

17 Plaintiff raises two issues in this action:

18 1.      Whether the ALJ properly considered the consultive examiner's opinion.

19 2.      Whether the ALJ properly considered the treating physician's opinion.

20

21 **STANDARD OF REVIEW**

22 Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to

23 determine whether the Commissioner's findings are supported by substantial evidence

24 and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d

25 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but

26 less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

27 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d

28 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a

1 | reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

2 | U.S. at 401.  This Court must review the record as a whole and consider adverse as

3 | well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986).

4 | Where evidence is susceptible to more than one rational interpretation, the

5 | Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452

6 | (9th Cir. 1984).

7

8 | **DISCUSSION**

9 | A.    Issue One.

10 | In evaluating medical opinions, the case law and regulations distinguish among

11 | three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

12 | those who examine but do not treat the claimant (examining physicians); and (3) those

13 | who neither examine nor treat the claimant (non-examining physicians).  *Lester v.*

14 | *Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Salee v. Chater*, 94

15 | F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d).  As a

16 | general rule, more weight should be given to the opinion of a treating source than to

17 | the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

18 | 647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2).  An ALJ may not reject the

19 | uncontradicted opinion of a treating doctor without providing "clear and convincing

20 | reasons" supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830

21 | (internal quotation marks omitted).  Even if the treating doctor's opinion is

22 | contradicted by another doctor, an ALJ may not reject the opinion without providing

23 | "specific and legitimate reasons" supported by substantial evidence in the record for so

24 | doing.  *Id.* (internal quotation marks omitted).  The opinion of an examining physician

25 | is, in turn, entitled to greater weight than the opinion of a non-examining physician.

26 | *Id.*; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  As is the case with the

27 | opinion of a treating physician, the Commissioner must provide "clear and

28 | convincing" reasons for rejecting the uncontradicted opinion of an examining

1 physician.  And like the opinion of a treating doctor, the opinion of an examining

2 doctor, even if contradicted by another doctor, can only be rejected for "specific and

3 legitimate reasons" that are supported by substantial evidence in the record.  *Lester*, 81

4 F.3d at 830-31.

5 On September 23, 2003, Esmail Sebti, M.D., conducted an electrodiagnostic

6 examination on plaintiff.  (AR 151.)  Dr. Sebti's findings included absent sural sensory

7 potentials, bilaterally; absent H-reflexes in the lower extremities; and "chronic

8 neuropathic changes in lower extremities, distally."  Dr. Sebti concluded that plaintiff

9 has "[p]eripheral polyneuropathy involving the lower extremities, mainly sensory in

10 nature."  (AR 152.)

11 In the decision, the ALJ held that:

12 [e]lectrodiagnostic testing [of plaintiff] revealed absent sural

13 sensory potentials, bilaterally; absent H-reflexes in the lower

14 extremities; and chronic neuropathic changes in the lower

15 extremities, distally (Exhibits 1F, 2F, 5F, and 7F/6).

16 (AR 13.)

17 Plaintiff contends that the ALJ thus impermissibly rejected Dr. Sebti's

18 conclusion that plaintiff has peripheral polyneuropathy involving the lower

19 extremities.  But the ALJ did not reject that conclusion.  The ALJ found that plaintiff

20 has "severe impairments," namely "noninsulin dependent diabetes mellitus, poorly

21 controlled; diffuse soft tissue swelling, joint space narrowing and valgus deformity of

22 the left knee; and *peripheral polyneuropathy of the lower extremities, mainly sensory*

23 *in nature*."  (AR 14, 18 (emphasis added).)  Therefore, plaintiff's argument lacks merit.

24 B.    Issue Two.

25 In disability benefits cases, physicians typically provide two types of opinions:

26 medical opinions that speak to the nature and extent of a claimant's limitations, and

27 opinions concerning the ultimate issue of disability, *i.e.*, opinions about whether a

28 claimant is capable of any work, given her or his limitations.  *Holohan v. Massanari*,

4

1  246 F.3d 1195, 1202 (9th Cir. 2001).  An ALJ may reject a treating physician's

2  uncontradicted opinion on the ultimate issue of disability only with "clear and

3  convincing" reasons supported by substantial evidence in the record.  *Reddick v.*

4  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678,

5  680 (9th Cir. 1993) (internal quotation marks omitted)).  If the treating physician's

6  opinion on the issue of disability is controverted, the ALJ must still provide "specific

7  and legitimate" reasons supported by substantial evidence in the record in order to

8  reject the treating physician's opinion.  *Id.*; *Holohan*, 246 F.3d at 1202-03.

9         In the decision, the ALJ held:

10               In evaluating the claimant's residual functioning

11               capacity, the undersigned has considered the opinions of

12               disability and severity of impairments expressed by Prem P.

13               Salhotra, M.D., the claimant's primary treating physician,

14               who noted on June 21, 2004, that the claimant is permanently

15               disabled.  After considering the totality of the medical

16               evidence of record, the undersigned rejects Dr. Salhotra's

17               opinion of disability for the following specific and legitimate

18               reasons as required by the 9th Circuit Court of Appeals and

19               pursuant to Social Security Rulings 96-2p and 96-5p.  First,

20               although Dr. Salhotra has diagnosed the claimant with

21               depression and prescribed an antidepressant, he is claimant's

22               primary physician.  He has not referred the claimant for

23               specialized treatment or counseling.  Despite the claimant's

24               continued reports of not feeling any better, psychiatrically,

25               Dr. Salhotra has not adjusted or prescribed other trials of

26               antidepressants.  As Dr. Salhotra is not a psychiatrist or

27               psychiatric specialist of any kind, his opinion of the

28               claimant's mental impairment or severity of any mental

1  impairment is not entitled to the great weight that would be

2  given to a specialist.  Second, the records from Dr. Salhotra's

3  own Clinic, do not indicate the claimant has such functional

4  restrictions as to be "permanently" disabled.  He merely

5  notes that the claimant cannot work due to neuropathy and

6  backache.  Third, although Dr. Salhotra has noted several

7  times in his notes that the claimant has bilateral macular

8  degeneration, he is not a specialist in this field, and his

9  progress notes do not reveal that he has examined the

10  claimant's eyes at all.  Furthermore, the only evidence of

11  visual problems, indicate that the claimant underwent

12  cataract extraction and lens placement of the left eye in

13  October 2003.  No evidence of macular degeneration was

14  noted at the time.  Fourth, the ability to work is a legal issue

15  reserved to the Commissioner, not a medial [sic] one to be

16  concluded by a physician.  To the extent that Dr. Salhotra's

17  opinions of disability and severity of impairments are not

18  well supported by the other substantial medical evidence of

19  record, including his own, they are not deserving of the great

20  weight generally according a treating source and have been

21  given only some weight (Exhibits 3F and 15F).

22  (AR 15.)

23    1.    The ALJ did not err in rejecting Dr. Salhotra's opinion of disability as to

24          plaintiff's diabetes and neuropathy.

25  Plaintiff argues that the record supports Dr. Salhotra's conclusion that plaintiff is

26  disabled because of neuropathy and diabetes, in that (1) another of plaintiff's treating

27  physicians, Dr. Sebti, concluded that plaintiff has peripheral polyneuropathy involving

28  the lower extremities; and (2) Dr. Salhotra noted plaintiff's diabetes mellitus ("DM")

6

1   and peripheral neuropathy in his treatment notes.  (*See* AR 134-138.)  This argument

2   lacks merit.  First, the ALJ *agreed* that plaintiff had diabetes mellitus and

3   polyperipheral neuropathy and that those impairments were severe.  (AR 14, 18.)

4   However, the ALJ rejected Dr. Salhotra's opinion (AR 132) that those impairments

5   rendered plaintiff "disabled."  In order to qualify for disability benefits, a claimant

6   must satisfy both the medical and vocational components to the statutory definition of

7   "disabled."  42 U.S.C. § 1382c; *Frost v. Barnhart*, 314 F.3d 359, 365 (9th Cir. 2002).

8   To satisfy the medical component, the claimant must prove an inability to "engage in

9   any substantial gainful activity by reason of any medically determinable physical or

10  mental impairment . . . which has lasted or can be expected to last for a continuous

11  period of not less than twelve months."  42 U.S.C. §§ 1382c(a)(3)(A).  To satisfy the

12  vocational component, a claimant must prove that his or her impairments "are of such

13  severity that [the plaintiff] is not only unable to do his previous work but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  *Id.* at §

16  1382c(a)(3)(B).

17      Dr. Salhotra's opinion that plaintiff is disabled because of diabetes and

18  neuropathy is controverted by other substantial evidence in the record, in that there

19  was evidence that notwithstanding those impairments, plaintiff is able to engage in

20  "substantial gainful work which exists in the national economy."  *Id.*; *see* AR 234-237.

21  Thus, the ALJ was only required to state "specific and legitimate reasons" for rejecting

22  Dr. Salhotra's opinion.  The ALJ did so.  As the ALJ noted, Dr. Salhotra's records do

23  not indicate that plaintiff was restricted from any specific activities because of his

24  polyneuropathy or diabetes.  (*See* AR 132-38.)  Nor did Dr. Salhotra opine as to

25  plaintiff's functional limitations.  (*See id.*)  Dr. Salhotra's opinion of disability only

26  stated that plaintiff was disabled because of neuropathy and diabetes.  (AR 132.)  It did

27  not explain how those impairments limited plaintiff's ability to work.

28      Moreover, there was substantial evidence in the record that plaintiff could

1   engage in some physical functions despite the pain in his lower legs.  Plaintiff testified

2   that he did some yardwork, shopped for himself, occasionally drove, performed some

3   household chores, and occasionally walked around for exercise.  (AR 218-19.)  In

4   addition, Dr. Joselyn Bailey, the testifying expert, testified that notwithstanding his

5   diabetes and neuropathy, plaintiff could (*inter alia*) lift 50 pounds occasionally and ten

6   pounds frequently; sit for an eight-hour day; stand and walk for two hours at a time for

7   four hours a day; use simple arm controls; and drive short distances.  (AR at 228-29.)

8   Similarly, the examining physician, Dr. Alexander Michelson, opined that plaintiff

9   could (*inter alia*) lift 50 pounds occasionally and 25 pounds frequently; stand and walk

10  for six hours in an eight-hour workday; sit without restriction; and use his hands for

11  fine and gross manipulative movements.  (AR 159.)  Thus, the ALJ's conclusion that

12  Dr. Salhotra's records do not show that plaintiff has such "functional restrictions" as to

13  be permanently disabled was sufficiently specific and legitimate, and supported by

14  substantial evidence, to support his rejection of Dr. Salhotra's opinion of disability

15  because of neuropathy and diabetes.

16          2.      A remand is required as to the ALJ's rejection of Dr. Salhotra's findings

17                  regarding the severity of plaintiff's mental and visual impairments.

18          The parties do not dispute that plaintiff has depression and anxiety.  Plaintiff

19  was apparently prescribed Effexor, an antidepressant, by Dr. Salhotra on February 23,

20  2004.  (AR 173.)  In turn, Lyle Forehand, M.D., an examining physician who

21  performed a psychiatric evaluation on plaintiff at the ALJ's request, diagnosed

22  claimant with a generalized anxiety disorder and a mild major depressive disorder.

23  (AR at 175.)  In addition to diagnosing plaintiff's depression as "mild," Dr. Forehand

24  / / /

25  / / /

26  / / /

27  / / /

28

1 found that plaintiff has a current Global Assessment of Functioning of 65[2] and had no

2 limitations on his ability to understand, remember, sustain concentration or

3 performance at a job, interact appropriately with the public, coworkers, and

4 supervisors.  (AR at 175.)  The ALJ found that plaintiff's "depression and anxiety

5 disorder, which the evidence reveals are mild in nature, under good control with

6 medication and results in no functional limitations, are non severe."  (AR at 15.)

7       Plaintiff contends that the ALJ erred in rejecting Dr. Salhotra's finding of the

8 severity of plaintiff's mental impairment.  (Joint Stipulation at 7.)  Dr. Salhotra's

9 opinion as to the severity of plaintiff's depression is not readily apparent from the

10 record, beyond the fact that he prescribed Effexor for it.  (*See* AR 131-41.)  The Court

11 finds, however, that the ALJ failed to provide "specific and legitimate" reasons for

12 giving less weight to Dr. Salhotra's diagnosis, insofar as it was contradicted by Dr.

13 Forehand's finding that the depression was "mild."  First, the ALJ takes issue with Dr.

14 Salhotra's failure to adjust plaintiff's treatment or refer him to a specialist, despite

15 plaintiff's complaint that his depression was not improving.  (AR 15.)  But Dr.

16 Salhotra's failure to take further steps to treat plaintiff's depression does not establish

17 that the depression was not severe.  Moreover, the ALJ's acknowledgment that

18 plaintiff complained that the depression did not improve despite the medication is

19 inconsistent with his finding that the depression was "under good control" with

20 medication.  (*Id.*)

21

22

---

23    [2]    A Global Assessment of Functioning score is the clinician's judgment of the
24 individual's overall level of functioning.  It is rated with respect only to psychological,
   social, and occupational functioning, without regard to impairments in functioning due to
25 physical or environmental limitations. *See* American Psychiatric Association, <u>Diagnostic</u>
26 <u>and Statistical Manual of Mental Disorders</u>, 32 (4th ed. 2000) (hereinafter "DSM IV").  A
   GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia)
27 OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy,
28 or theft within the household), but generally functioning pretty well, has some meaningful
   interpersonal relationship)."  <u>DSM IV</u> at 34.

1    Second, although Title II's regulations give more weight to opinions that are

2  explained than to those that are not (*Holohan*, 246 F.3d at 1202 (citing 20 C.F.R. §§

3  404.1527(d)(3))), the ALJ apparently did not rely on this principle in that he did not

4  cite it in rejecting Dr. Salhotra's diagnosis.  In addition, although the opinion of a non-

5  treating physician may in itself constitute substantial evidence where the non-treating

6  physician's opinion is based on an independent clinical finding (*Magallanes v. Bowen*,

7  881 F.2d 747, 751 (9th Cir. 1989)), the record is unclear as to what, if any, tests

8  supported Dr. Forehand's diagnosis.  Finally, although Title II's regulations give more

9  weight to the opinions of specialists concerning matters relating to their speciality over

10  opinions of nonspecialists (*Holohan*, 246 F.3d at 1202 (citing 20 C.F.R. §§

11  404.1527(d)(5))), the ALJ did not rely on Dr. Forehand's findings in setting forth his

12  reasons for rejecting Dr. Salhotra's opinion.  Moreover, a physician is qualified to give

13  a medical opinion as to a claimant's mental state even if the physician is not a

14  psychiatrist.  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

15    The ALJ also found that plaintiff's visual impairment was non-severe.  (AR at

16  14-15.)  Plaintiff argues that the ALJ erred in rejecting Dr. Salhotra's diagnosis of

17  macular degeneration.  Macular degeneration is a degenerative condition of the area of

18  the retina called the macula, which controls central vision.  *Currier v. Thompson*, 369

19  F. Supp. 2d 65, 65-66 (D. Me. 2005); *see also* Stedmans Medical Dictionary 104590,

20  237530 (27th ed. 2000).  The disease is progressive and can cause blurring or blank

21  spots in central vision.  *Currier*, 369 F. Supp. 2d at 66; Schmidt, J., M.D., Attorney's

22  Dictionary of Medicine, M-10 (Matthew Bender 2001).  The Court finds that Dr.

23  Salhotra's diagnosis of macular degeneration was not contradicted by the record.  Dr.

24  Dennis Lowman, O.D.'s notes indicate that on May 30, 2003, he found "[h]emorrhage

25  in [the] macular area" of plaintiff's left eye.  (AR 154.)  April 2005 progress notes

26  from the HDMC Family Medical Clinic refer to "[m]acular degeneration – Both

27  [eyes]."  (AR 197.)  Furthermore, the records from plaintiff's October 2003 cataract

28  ///

1  surgery[3] do not specifically indicate that no macular degeneration was found at that

2  time (and in fact refer to "atrophy" in plaintiff's eyes). (*See* AR 143, 144, 146.)  Thus,

3  the ALJ was required to give clear and convincing reasons, supported by substantial

4  evidence, for rejecting Dr. Salhotra's diagnosis.  The ALJ did not do so.

5       First, the Court agrees with plaintiff that Dr. Salhotra's notes, which repeatedly

6  state that plaintiff has macular degeneration, do indicate that Dr. Salhotra examined

7  plaintiff's eyes and made a reasoned assessment as to the cause of plaintiff's visual

8  impairment.  (*See* AR 133, 135, 137, 138.)  Although it is true that a specialist's

9  opinion weighs more than a non-specialist's, in rejecting Dr. Salhotra's medical

10  opinion, the ALJ did not cite a specialist's opinion that contradicted Dr. Salhotra's

11  finding of macular degeneration.  Moreover, although plaintiff had cataract surgery,

12  cataract surgery does not necessarily ameliorate macular degeneration.  Although it

13  may allow more light through the lens, thereby improving the patient's peripheral

14  vision, it does not address the degeneration of the central retina and the resulting loss

15  of central vision.  *See U.S. v. Rutgard*, 116 F.3d 1270, 1283 (9th Cir. 1997) (discussing

16  expert witness testimony on potential effects of cataract surgery on macular

17  degeneration).

18       Furthermore, plaintiff testified that he had loss of vision in his left eye even after

19  surgery, that he did not have a driver's license because he failed the DMV vision test,

20  and that his vision was blurry even with correction.  (AR 212-13, 218.)  And as noted

21  above, records from other clinics support the finding of degeneration of the macular

22  area.  Accordingly, plaintiff's cataract surgery, and the fact that Dr. Salhotra is not a

23  specialist, do not amount to "clear and convincing" reasons for rejecting Dr. Salhotra's

24

25

26

27       [3]     A cataract is complete or partial opacity of the ocular lens. Stemans Medical
Dictionary at 66610.  The lens is distinct from the macular, in that the lens is the
28  transparent structure suspended just behind the pupil of the eye (Attorney's Dictionary of
Medicine at L-74) whereas the macula is located at the back of the interior of the eyeball.

1 | macular degeneration diagnosis.[4]  The Court further notes that neither the testifying

2 | expert, Dr. Bailey, nor the examining physician, Dr. Alexander Michelson, accounted

3 | for plaintiff's macular degeneration and depression when opining as to plaintiff's

4 | residual functioning capacity.  (*See* AR 156-60, 228-31.)

5 | Therefore, the matter requires remand for a reassessment of the severity of

6 | plaintiff's mental and visual impairments and a determination of whether, if those

7 | impairments are severe, plaintiff is disabled as a result.  The judgement of the

8 | Commissioner is accordingly reversed and the matter is remanded pursuant to sentence

9 | 4 of 42 U.S.C. § 405(g) for further proceedings.

10 | IT IS SO ORDERED.

11 |

12 | DATED: February 13, 2008

13 |

14 | / s / FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 | [4]  Finally, the ALJ's catch-all statement that he rejected Dr. Salhotra's opinions where they were not well-supported by the record (AR 15) provides an insufficient basis

28 | for rejecting Dr. Salhotra's opinions.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).